UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALLORY CAVADA, on individual, on behalf of herself and on behalf of all persons similarly situated,<br><br>　　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>INTER-CONTINENTAL HOTELS GROUP, INC., a Corporation; IHG MANAGEMENT MARYLAND LLC, a Limited Liability Company; INTERCONTINENTAL HOTELS GROUP RESOURCES, INC., a Corporation; INTERCONTINENTAL HOTELS GROUP RESOURCES, LLC, a Limited Liability Company; and DIES 1 through 50, inclusive,<br><br>　　　　　　　　　　　　　Defendants. | Case No.: 19cv1675-GPC(BLM)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**<br><br>**[Dkt. No. 8.]** |

Before the Court is Plaintiff's motion to remand a putative class action to state court. (Dkt. No. 8.) Defendants filed an opposition on September 27, 2019, and Plaintiff filed a reply on October 4, 2019. (Dkt. Nos. 13, 14.) The Court finds that the matter is

1

appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1). Based on the reasoning below, the Court DENIES Plaintiff's motion to remand.

**Background**

On July 29, 2019, Plaintiff Mallory Cavada ("Plaintiff") filed a putative class action in San Diego Superior Court against her joint employers Defendants Inter-Continental Hotels Group, Inc.; IHG Management Maryland LLC ("IHGM"); Intercontinental Hotels Group Resources, Inc. ("IHGR"); and Intercontinental Hotels Group Resources, LLC ("IHGRLLC") (collectively "Defendants") alleging (1) unfair competition, in violation of Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) failure to pay minimum wages, in violation of Cal. Lab. Code §§ 1194, 1197, 1197.1; (3) failure to pay overtime wages, in violation of Cal. Lab. Code § 510 *et seq.*; (4) failure to provide required meal periods, in violation of Cal. Lab. Code §§ 226.7, 512 and the applicable Industrial Welfare Commission ("IWC") Wage Order; (5) failure to provide required rest periods, in violation of Cal. Lab. Code §§ 226.7, 512, and the applicable IWC Wage Order; (6) failure to reimburse necessary business-related expenses and costs, in violation of Cal. Lab. Code § 2802; (7) failure to provide complete and accurate wage statements, in violation of Cal. Lab. Code § 226; and (8) failure to timely pay wages, in violation of Cal. Lab. Code §§ 201, 202, 203. (Dkt. No. 1-4, Not. of Removal, Ex. C, Compl.) On September 3, 2019, Defendants removed the case to this Court. (Dkt. No. 1.)

Plaintiff was employed by Defendants at the Staybridge Suites in the Rancho Bernardo area of San Diego from October 2017 to September 2018 as a Front Desk Agent, as a non-exempt employee, paid on an hourly basis, and entitled to the legally required meal and rest periods and payment of minimum and overtime wages due for all time worked. (Dkt. No. 1-4, Not. of Removal, Compl. ¶ 7.)

She brings a class action on behalf of herself and a California class on the First Cause of Action for UCL violations as defined as

> all individuals who are or previously were employed by Defendant Inter-Continental Hotels Group, Inc. and/or Defendant IHG Management

> Maryland LLC and/or Defendant Intercontinental Hotels Group Resources, LLC and/or Intercontinental Hotels Group Resources, Inc. in California and classified as non-exempt employees (the "CALIFORNIA CLASS") at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court (the "CALIFORNIA CLASS PERIOD")

(Id. ¶ 9, 24.) She also seeks to certify a California labor sub-class on the Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth causes of action defined as

> all members of the California Class who are or previously were employed by Defendant Inter-Continental Hotels Group, Inc., and/or Defendant IHG Management Maryland LLC and/or Defendant Intercontinental Hotels Group Resources, LLC and/or Intercontinental Hotels Group Resources, Inc. in California (the "CALIFORNIA LABOR SUB-CLASS") at any time during the period three (3) years prior to the filing of the complaint and ending on the date as determined by the Court (the "CALIFORNIA LABOR SUB-CLASS PERIOD")

(Id. ¶ 34.) She claims that the amount in controversy does not exceed $5,000,000. (Id. ¶¶ 24, 34.) On September 11, 2019, Plaintiff filed a motion to remand the case to state court challenging Defendants' claim in their Notice of Removal that the $5,000,000 amount in controversy has been met. (Dkt. No. 8.) The motion is fully briefed. (Dkt. Nos. 13, 14.)

**Discussion**

**A.  Legal Standard**

Federal courts have original jurisdiction over class actions where (1) any member of the plaintiff class is diverse from any defendant; (2) the proposed class contains 100 or more putative class members; (3) and the amount in controversy exceeds the "sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d); Rodriguez v. AT & T Mobility Servs., LLC, 728 F.3d 975, 978 (9th Cir. 2013). Plaintiff moves solely on the third factor alleging that Defendants failed to demonstrate, with supporting evidence and with reasonable assumptions, the $5,000,000 amount in controversy. In response, Defendants contend that they made reasonable assumptions based on the

allegations in the Complaint and have met their burden to demonstrate the $5,000,000 amount in controversy.

"[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 87 (2014). When the amount in controversy is challenged, both sides submit evidence and the court must decide whether the amount-in-controversey requirement has been met by a preponderance of the evidence. Id. at 89. However, ultimately, the defendant bears the burden of proving the amount in controversy. Rodriguez v. AT&T Mobility Servs. LLC, 728 F.3d 975, 978 (9th Cir. 2013). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019) (quoting Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 400 (9th Cir. 2010)).

A preponderance of the evidence standard requires a defendant to "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (citation omitted). A removing defendant may rely on "a chain of reasoning that includes assumptions" and "an assumption may be reasonable if it is founded on the allegations of the complaint." Arias, 936 F.3d at 925 (quoting Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1198-99 (9th Cir. 2015)).

"In assessing the amount in controversy, [courts] may consider allegations in the complaint and in the notice of removal, as well as summary-judgment-type evidence relevant to the amount in controversy", Chavez v. JPMorgan Chase & Co., 888 F.3d 413, 416 (9th Cir. 2018) (citation omitted), as well as "supplemental evidence later proffered by the removing defendant, which was not originally included in the removal notice." Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. Feb. 27, 2008) (citing Cohn v. Petsmart, Inc., 281 F.3d 837, 840 n.1 (9th Cir. 2002)).

In support, Defendants present the declaration and supplemental declaration of Robert Hadfield who has been employed as Director of Human Resources, Americas Hotel Operations, and in similar positions, since July 2000 by Six Continents Hotels, Inc., the direct corporate parent of InterContinental Hotels Group Resources LLC. (Dkt. No. 1-7, Hadfield Decl. ¶ 2; Dkt. No. 13-2, Suppl. Hadfield Decl. ¶ 2.) He is the primary human resources business partner for the extended stay and/or limited service hotels managed by Defendants which include the Staybridge Suites hotels. (Dkt. No. 1-7, Hadfield Decl. ¶ 2; Dkt. No. 13-2, Suppl. Hadfield Decl. ¶ 2.)

Hadfield determined that between July 29, 2015 and August 28, 2019, Defendants IHGR and IHGRLLC employed about 482 individuals as non-exempt employees at seven Staybridge Suites hotels in California. (Dkt. No. 1-7, Hadfield Decl. ¶ 5.) Between the same time period, Defendant IHGM employed about 147 individuals as non-exempt employees at two Staybridge Suites hotels in California. (Id. ¶ 6.) Therefore, the putative class consists of a total of about 629 non-exempt employees with an average hourly rate of $14.31 per hour. (Id. ¶ 7.)

Hadfield also determined that in addition to the Staybridge Suites hotels, about 1,918 non-exempt employees were also employed at Defendants' six other hotels in California and worked about 201,415 workdays during July 29, 2015 and August 28, 2019. (Dkt. No. 13-2, Suppl. Hadfield Decl. ¶ 13.) These non-exempt employees were part of a wage and hour class action settlement in <u>Akli Merzouki v. IHG Mgmt. Maryland LLC, and Intercontinental Hotels Group</u> in Los Angeles County Superior Court and have released claims on causes of actions alleged in that case. (Dkt. No. 1-4, Not. of Removal, Ex. C, Compl. ¶ 8.) However, Defendants note that the <u>Merzouki</u> settlement does not exclude claims for violation of meal rest periods and failure to reimburse business expenses because those claims were not raised in the case and may be used to

calculate the amount in controversy in this case. (Dkt. No. 13; Dkt. No. 13-2, Ds' RJN[1], Exs. 1, 3.) In reply, Plaintiff does not dispute this contention.[2]

In Arias, the defendant's notice of removal contained the number of putative class employees, the average rate of pay and the number of workweeks worked during the class period and based on this data, the defendant made assumptions about the frequency of the violations based on the allegations in the complaint. Arias, 936 F.3d at 926. Relying on the complaint's allegation that the defendant "routinely" failed to pay overtime wages and compensated for missed rest and meal breaks, the defendant assessed 6 minutes of unpaid overtime per day and one missed rest break per week. Id. Because the defendant tied its assumed violation rates to the complaint, the Ninth Circuit noted that these assumptions "are plausible and may prove to be reasonable in light of the allegations in the complaint." Id. at 927 (remanding case to district court).

The Complaint does not plead any facts to support the amount in controversy but only summarily asserts that the amount in controversy is under $5,000,000. (Dkt. No. 1-4, Not. of Removal, Ex. C, Compl. ¶¶ 24, 34.) Therefore, the Court looks to each cause of action at dispute to determine whether Defendants' assumed violation rates are reasonable based on the allegations in the Complaint.

///
///
///

---

[1] Defendants filed a request for judicial notice of three court filings in the Merzouki state court case. No opposition has been filed. Because court filings are subject to judicial notice, the Court GRANTS Defendants' request for judicial notice. See Trigueros v. Adams, 658 F.3d 983, 987 (9th Cir. 2011) (court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

[2] The Court questions whether the meal rest period violations and failure to reimburse business expense not asserted in the Merzouki complaint were nonetheless released by the broad release in the class action settlement. (Dkt. No. 13-1, Ds' RJN, Ex. 3 at p. 45.) Because Plaintiff does not oppose Defendants' argument that the Merzouki class members may be subject to the class in this case, the Court takes them into consideration in assessing the amount in controversy. However, even if the Court did not take them into consideration, the amount of controversy is still met.

**B.     Unpaid Overtime Compensation (Third Cause of Action)**

In California, employees who work more than eight (8) hours per workday and more than forty (40) hours per workweek are entitled to receive additional compensation beyond their regular wages. Cal. Labor Code § 510.

The Complaint alleges that Defendants willfully and intentionally failed to pay employees for all overtime worked. (Dkt. No. 1-4, Not. of Removal, Ex. C, Compl. ¶ 73.) Defendants have a "uniform pattern of unlawful wage and hour practices" and implemented "a uniform policy and practice that failed to accurately record overtime worked." (Id. ¶ 78.) The Complaint further asserts that Defendants "systematically elected, either through intentional malfeasance or gross nonfeasance, to not pay employees for their labor as a matter of uniform company policy, practice and procedure, and [Defendants] perpetrated this systematic scheme by refusing to pay [Plaintiff] and other members of the California Labor Sub-Class for overtime worked." (Id. ¶ 85.)

In the notice of removal, Defendants explain that given the dates of service of the 629 employees, they worked about 45,915 workweeks since July 29, 2015. (Dkt. No. 1-7, Hadfield Decl. ¶¶ 5-7.) In interpreting Plaintiff's allegations conservatively, that Defendants had a "uniform policy and practice" or "pattern and practice", they assume that Plaintiff is claiming two hours of unpaid overtime per work week and the amount Plaintiff seeks is about $1,971,130. (Dkt. No. 1, Not. of Removal ¶¶ 29-30.) Even with a more conservative estimate of .5 hours of unpaid overtime per workweek, the amount sought on behalf of the putative class is about $492,710. (Dkt. No. 13 at 23.) Plaintiff responds that Hadfield's declarations provide no support for Defendants' assumptions and while he could have run payroll reports to discover how many employees were subject to the violations alleged in the complaint, he did not.

The Court disagrees with Plaintiff's argument and concludes that Defendants are not required to "comb through [their] records to identify and calculate the exact frequency of violations" and essentially prove the alleged violations. See Andrade v. Beacon Sales Acquisition, Inc., Case No. CV 19-6963-CJC(RAOx), 2019 WL 4855997,

at *3 (C.D. Cal. Oct. 1, 2019) (quoting Lopez v. Aerotek, Inc., No. SACV 14-803 (CJGx), 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015)). Defendants need only provide an estimate of the amount in controversy that are plausible based on the allegations in the complaint and need not "prove it actually violated the law at the assumed rate." Arias, 936 F.3d at 927.

The Ninth Circuit has held that a "pattern and practice" does not support a 100% violation rate. Ibarra, 775 F.3d at 1198-99 ("'pattern and practice' of doing something does not necessarily mean always doing something" to support one meal break in each five hour shifts and one rest break in each 3.5 hour shifts). District courts have found assuming violations rates between 25% to 60% reasonable where a complaint alleges a "policy and practice." Andrade, 2019 WL 4855997, at *3 (violation rate of one hour off-the-clock work and two hours of uncompensated overtime per workweek was reasonable based on allegations that the violations occurred "as matters of policy and/or practice"); Olson v. Becton, Dickinson and Co., Case No. 19cv865-MMA(BGS), 2019 WL 4673329, at *4 (S.D. Cal. Sept. 25, 2019) (assuming 25% violation rate, five violations per pay period for meal and rest period violations, reasonable based on allegations of a "pattern and practice") (citing Bryant v. NCR Corp., 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (finding a 60% violation rate for the meal period claim or three of five violations per workweek, and a 30% violation rate or three of ten rest periods per workweek, where the complaint alleged that the defendant had a "policy and practice" of meal and rest period violations); Elizarraz v. United Rentals, Inc., Case No. 18cv9533-ODW(JC), 2019 WL 1553664, at *3-4 (C.D. Cal. Apr. 9, 2019) (finding a 50% violation rate, or 2.5 out of 5 missed meal periods per week, and a 25% violation rate, or 2.5 out of 10 missed rest period per week, reasonable where the complaint alleged a "pattern and practice" of meal and rest period violations); Oda v. Gucci Am., Inc., Nos. 2:14-CV-7468-SVW (JPRx), 2:14-CV-07469-SVW (JPRx), 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (finding defendant's assumption of a 50% violation rate reasonable where plaintiff's complaint alleged that defendant maintained a policy or practice of not paying

meal or rest premiums, that class members sometimes did not receive all of their meal periods and that not all rest periods were given timely)).

On the overtime compensation claim, the Court concludes that based on the Complaint's allegations of a "uniform pattern of unlawful wage and hour practices", "a uniform policy and practice that failed to accurately record overtime worked" and a "systemic scheme" to refuse to pay overtime, two hours of unpaid overtime per week is is reasonable, see Andrade, 2019 WL 4855997, at *3 (violation rate of one hour off-the-clock work and two hours of uncompensated overtime per workweek was reasonable based on allegation of "policy and/or practice"), and support Defendants' proposed amount in controversy of $1,971,130.[3] (Dkt. No. 1, Not. of Removal ¶ 30.)

**C.  Meal and Rest Break Claims (Fourth and Fifth Causes of Action)**

California prohibits employers from requiring employees to work during a required meal or rest period, and the employer must pay to the employee an additional hour of pay at the employee's regular rate of pay for each day that the period is not provided. Cal. Labor Code §§ 226.7(b)-(c); see also Cal. Labor Code § 510.

The Complaint maintains that Plaintiff and proposed class members were unable to take "30 minutes off duty meal breaks" and for "some" shifts, they worked more than five hours without receiving a meal break and for "some workdays" they did not receive a second off-duty meal period when they worked 10 hours. (Dkt. No. 1-4, Not. of Removal, Ex. C, Compl. ¶ 14.) This was in accordance with Defendants' "strict corporate policy and practice." (Id.) "Defendant, as a matter of company policy, practice and procedure, intentionally, knowingly and systematically failed to compensate [Plaintiff] and the other members of the [California Class] for missed meal and rest periods." (Id. ¶¶ 19, 26.) Defendants had a "uniform policy and practice" to avoid the payment for all time worked. (Id. ¶ 19; id. ¶ 27 ("as a matter of uniform and systematic

---

[3] Plaintiff does not dispute any of Defendants' calculations and only dispute the assumed violation rates.

policy and procedure"). Further, for rest periods, Plaintiff and other class members were required from "time to time" to work in excess of four hours without being provided (10) minute rest periods. (Id. ¶ 15.) "[E]mployees were denied their first rest periods of at least ten (10) minutes for some shifts worked of at least two (2) to four (4) hours from time to time, a first and second rest period of at least ten (10) minutes for some shifts worked of between six (6) and eight (8) hours from time to time, and a first, second and third rest period of at least ten (10) minutes for some shifts worked often (10) hours or more from time to time." (Id.)

Further, the Complaint repeats that due to the rigorous work schedules, Plaintiff and class members were "from time to time not fully relieved of duty . . . for their meal periods", (Dkt. No., 1-4, Not. of Removal, Ex. C, Compl. ¶¶ 89), and "periodically denied their proper rest periods, (id. ¶ 93). In addition, there were violations of a second off-duty meal period "in some workdays in which these employees were required . . . to work ten (10) hours of work." (Id. ¶ 89.)

Relying on the allegations of a "policy and practice" of failing to provide meal and rest breaks, Defendants, in the Notice of Removal claim they reasonably assumed two meal break and two rest break violations per week. (Dkt. No. 1, Not. of Removal ¶¶ 33, 36.) Based on the 629 non-exempt employees who worked about 45,915 workweeks during the relevant period and given the dates of service of the putative class members and the average hour rate of $14.31, the amount at issue calculates to $1,314,087 for meal break violations and $1,314,087 for rest break violations. (Id. ¶¶ 31-33.)

In their opposition, Defendants alter their original calculation asserted in the Notice of Removal and also include the class members of the Merzouki settlement to this claim because they did not allege a meal period violation. (See Dkt. No. 13-1, Ds' RJN, Ex. 3.) Therefore, for the meal break violations, the total putative class size is about

10

2,531[4] who worked 247,334 workweeks during the relevant period at an average hourly rate of $14.93 per hour. (Dkt. No. 13-2, Suppl. Hadfield Decl. ¶¶ 15-16.) Based on these numbers, and reducing the number of violations to one meal period violation per week (a 20% violation) the amount sought for unpaid meal break is about $3,692,696. As to rest break, Defendants also alter their original calculation and now assert that based on one rest period violation per week, the amount Plaintiff and the class members seek is $657,043.

On these causes of action, Plaintiff utilizes both language supporting more frequent violations such as "as a matter of company policy, practice and procedure", "systematically" and "uniform policy and practice" with words that limits the scope of her allegations, such as "from time to time", "periodically", "some shifts", and "some workdays". In her briefs, Plaintiff selectively relies solely on the language of "time to time" and "periodically" to challenge Defendants' assumed violation rates without addressing her use of words that broaden the extent of the violations such as "systematically" and "uniform policy and practice."

In Salazar v. Johnson & Johnson Consumer Inc., No. 2:18-CV-05884-SJO-E, 2018 WL 4560683, at *3-4 (C.D. Cal. Sept. 19, 2018), the court held that the assumption of one missed meal break and one missed rest period every five shifts, a 20% violation, was not justified where the complaint alleged that violations occurred "from time to time" or "periodically". However, the complaint in Salazar did not also assert a policy or practice or procedure as Plaintiff does in this case. Similar to Salazar, in Cummings v. G6 Hospitality, Case No. 19cv122-GPC(LL), 2019 WL 1455800, at *3 (S.D. Cal. Apr. 2, 2019), this Court held that a 100% violation rate on the inaccurate wage statement and

---

[4] Defendants determined that there are 629 non-exempt potential class members who worked at 9 Staybridge Suites hotels in California in this case and 1,918 non-exempt employees who worked at the six other non-Staybridge Suites hotels in California. (Dkt. No. 13-2, Suppl. Hadfield Decl. ¶¶ 10, 13.) The Court notes that adding these two numbers equals 2,549 non-exempt employees subject to the meal break claim. However, Plaintiff does not challenge these numbers and for purposes of this motion, the Court relies on Defendants' numbers.

11

waiting time penalties claim was not reasonable when the complaint alleged "from time to time" or "when" the plaintiffs worked overtime. Id. at *3. In Gonzalez v. Hub Int'l Midwest Ltd., Case No. ED CV 19-557 PA (ASx), 2019 WL 2076378, at *4 (C.D. Cal. May 10, 2019), on the meal and rest period violations, the complaint alleged a "strict corporate policy and practice" and also that violations occurred from "time to time" for "some shifts" or "periodically" and the court held there was no basis for assuming three missed meal periods and three missed rest periods each week. In Salazar v. PODS Enters., LLC, Case No. EDCV 19-260-MWF (KKx), 2019 WL 2023726 at *2-3 (C.D. Cal. May 8, 2019), the complaint alleged "pattern and practice", "regularly required to work" "consistently" and "occasionally"; therefore a 100% violation rate, or one meal break and one rest break violation per day was not reasonable but concluded based on these allegations that one meal and one rest break violation per week was reasonable.

In a case similar to this case using broad and limiting language, the plaintiff alleged that the defendant had a "uniform policy and practice" with respect to meal breaks whereby it "often" failed to provide class members with all legally required meal breaks, causing class members to, "from time-to-time," forfeit meal breaks without compensation. Nunes v. Home Depot USA, Inc., No. 19cv1207-JAM-DB, 2019 WL 4616903, at *2 (E.D. Cal. Sept. 12, 2019). As to rest breaks, the complaint alleged that the defendant had a "'uniform policy, practice, and procedure' restricting rest breaks resulting in class members 'periodically' (or 'from time to time') being denied required rest breaks, with the number of missed rest breaks varying by class members' work schedules." Id. at *2. The district court concluded that the defendant's assumption of one missed meal break and one missed rest break per week was reasonable. Id.

Caselaw dictates that a 100% violation rate is not reasonable based on allegations of a "pattern and practice", Ibarra, 775 F.3d at 1198-99, but violations rates of 25-60% based on "pattern and practice" and "policy and practice" are reasonable. See Olson, 2019 WL 4673329, at *4 (reasonable assumption of 25% violation rate, five violations per pay period for meal and rest period violations"); Bryant, 284 F. Supp. 3d at 1151

(finding a 60% violation rate for the meal period claim or three of five violations per workweek, and a 30% violation rate or three of ten rest periods per workweek, reasonable where the complaint alleged that the defendant had a "policy and practice" of meal and rest period violations); Elizarraz, 2019 WL 1553664, at *3-4 (finding a 50% violation rate, or 2.5 out of 5 missed meal periods per week, and a 25% violation rate, or 2.5 out of 10 missed rest period per week, reasonable where the complaint alleged a "pattern and practice" of meal and rest period violations). Therefore, based on these parameters, allegations of "periodically" or "from time to time" along with broader language of "pattern and practice" and "policy and practice" would support a violation rate under 25%.

Here, contrary to Plaintiff's argument, Defendants do not assert a 100% violation rate. They assert a conservative violation rate of one meal period violation per week, a 20% violation, and the amount sought for unpaid meal break amounts to $3,692,696. As to rest break, in their opposition, Defendants reduce the number of violations as stated in the Notice of Removal and now assert that their assumption is based on just one rest period violation per week, a 10% violation, which totals $657,043. The Court concludes that Defendants' assumptions of 20% for meal period violations and 10% for rest period violations are reasonable.

**C.     Unreimbursed Business Expenses (Sixth Cause of Action)**

Employers are required to reimburse an employee for all necessary expenditures incurred by an employee incurred while discharging their job duties. Cal. Labor Code § 2802.

The Complaint claims that as a "matter of corporate policy, practice and procedures" Defendants failed to reimburse and indemnify Plaintiff and the class members for required business expenses incurred while discharging their duties. (Dkt. No. 1-4, Not. of Removal, Ex. C, Compl. ¶ 16.) Specifically, they used their own personal cellular phones in the course of their job duties and were not reimbursed for the

costs associated with using their personal cellular phones. (Id. ¶ 17.) They were required to clock in and out for work as well as other work-related usage. (Id.)

Defendants rely on the allegation that "as a matter of corporate policy, practice and procedure" and daily usage based on the allegation that Plaintiff and class members had to clock in and out every day and assumed that Plaintiff is alleging unreimbursed phone expenses of $20 per month per employee. Therefore, during the relevant time period, Defendants employed 629 non-exempt employees who worked about 45,915 workweeks, the amount of alleged unreimbursed expenses Plaintiff seeks is $229,560. (Dkt. No. 1, Not. of Removal ¶ 38.) In opposition, Defendants update their calculation to include the class members from the Merzouki case. Therefore, Defendants employed 2,531 non-exempt employees who worked about 247,334 workweeks during the relevant period. (Dkt. No. 13-2 Suppl. Hadfield Decl. ¶¶ 11, 13, 14.) Therefore, the amount of alleged unreimbursed expenses is about $1,236,740. Plaintiff objects because Defendants do not explain how they arrived at the $20 per month per employee's phone expenses. Defendants relies on caselaw to support their conservative estimate of $20 per month unreimbursed phone expenses. See Castro v. ABM Indus., Inc., Case No. 17cv3026-YGR, 2017 WL 4682816, at *4-5 (N.D. Cal. Oct. 19, 2017) (allegations of "regularly", "common" practices, support assumption that plaintiffs incurred at least one reimbursable cell phone expense for each month worked using cost of $27.14/month.). Defendants' use of $20 per month for daily reimbursable cell phone expenses is on the conservative side. See id. Accordingly, the Court concludes that $20/month is based on a reasonable assumption based on the allegation in the Complaint for a total of $1,236,740.

**D.    Wage Statement Penalties (Seventh Cause of Action)**

Under California law, when employer fails to provide accurate wage statements, an employee may seek penalties of $50 for the initial pay period in which a violation occurred and $100 for each subsequent pay period with a violation, not to exceed an aggregate of $4,000 per employee. Cal. Lab. Code § 226(e)

14

19cv1675-GPC(BLM)

The Complaint alleges that as a result of failing to pay for missed meal and rest breaks, Defendants also failed to provide Plaintiff and other class members with complete and accurate wage statements, failed to properly list the correct name of the legal entity that was Plaintiff's employer and failed to provide an itemized wage statements. (Dkt. No. 1-4, Not. of Removal, Ex. C, Compl. ¶¶ 18, 102.) "As a result, [Defendants] from "time to time" provided [Plaintiff] and the other members of the [California Class] with wage statements which violated Cal. Lab. Code§ 226." (Id. ¶ 18.) The Complaint asserts that because Defendants did not accurately record the employees' missed meal and rest breaks, they violated section 226 by failing to provide an accurate wage statement. (Id. ¶ 102.)

Based on Plaintiff's allegations, Defendants assumed that she is alleging that every wage statement issued to Plaintiff and the putative class members violated section 226. Therefore, between July 29, 2018 and August 28, 2019, 351 non-exempt employees worked a total of 7,011 pay periods, the total of wage statement penalties equals $677,550. (Dkt. No. 1, Not. of Removal ¶¶ 39-40.)

Plaintiff challenges Defendants' assumption of a 100% violation rate arguing that violations of "time to time" or "periodically" does not support a 100% violation rate. The Court disagrees with Plaintiff's interpretation. As discussed above, the Court found that one missed meal and one missed rest break violations were reasonable assumptions based on allegations of "as a matter of company policy, practice and procedure", "systematically", "uniform policy and practice" and "from time to time", "periodically", and "some shifts". Therefore, since one missed meal and rest period was reasonable, that would mean that every wage statement was inaccurate and subject to the penalties. Accordingly, the Court concludes that a 100% violation rate is a reasonable assumption based on these claims. See Nunes, 2019 WL 4316903, at *3 (100% assumed violation was reasonable based on reasonable assumption that class members suffered at least one violation of meal or rest break violations). Accordingly, the amount of $677,550 is based on a reasonable assumption based on the Complaint's allegations.

E.  **Waiting Time Penalties (Eighth Cause of Action)**

An employer is required to pay wages and a failure to pay all wages due upon termination results in a penalty equal to the employee's daily wages, for up to 30 days of pay. Cal. Labor Code §§ 201, 202, 203.

Plaintiff alleges that her employment and other putative class members have terminated and Defendants failed to tender payment of wages to the employees who missed meal and rest breaks. (Dkt. No. 1-4, Not. of Removal, Ex. C, Compl. ¶ 110.) She seeks damages equal to up to "thirty days of pay as penalty for not paying all wages due at time of termination for all employees who terminated employment." (Id. ¶ 111.)

During the relevant three-year statutory period starting July 29, 2016, 288 non-exempt employees have quit or been terminated from the relevant hotels in California. (Dkt. No. 1-7, Hadfield Decl. ¶ 9.) The standard work day for nearly all of the non-exempt employees has been eight hours. (Id. ¶ 18.) Applying the $14.31 average hourly rate, and Plaintiff's assertion that the employees are entitled to 30 days of pay in penalties, the amount sought is $989,107. (Dkt. No. 1, Not. of Removal ¶¶ 41, 42.)

Again, Plaintiff argues that a 100% violation rate is not a reasonable assumption based on the allegations in the Complaint. Because the waiting time penalties are also based on the one missed meal and one missed rest breaks, a 100% violation rate, that each employee suffered at least one violation, is based on a reasonable assumption and supports Defendants' proposed amount of $989,107 for waiting time penalties.

F.  **Attorney's Fees**

In opposition, Defendants, for the first time, assert attorney's fees of $1,933,936 which is an estimated fee award of 25% of Plaintiff's damages that can be used to calculate the amount in controversy. Arias, 936 F.3d at 927. Here, because the amount in controversy based on the claims exceed $5,000,000, the Court need not address attorneys' fees.

In sum, Defendants have demonstrated, by a preponderance of the evidence that the $5,000,000 amount in controversy is met. Defendants have shown the amount in

controversy is $1,971,130 for unpaid overtime; $3,692,696 for meal break violations; $657,043 for rest break violations; $1,236,740 for unreimbursed business expenses; $677,550 for inaccurate wage statements; and $989,107 for waiting time penalties and totals $9,224,266[5] exclusive of attorneys' fees. Therefore, the Court DENIES Plaintiff's motion to remand.[6]

## Conclusion

Based on the reasoning above, the Court DENIES Plaintiff's motion to remand the case to state court.

IT IS SO ORDERED.

Dated: November 1, 2019

Hon. Gonzalo P. Curiel
United States District Judge

---

[5] If the Court did not consider the Merzouki class members on the meal break claim or unreimbursed business expenses, the amount in controversy would still be met.

[6] The Court notes that Defendants ultimately bear the burden of demonstrating the amount in controversy but once they have met their burden, a plaintiff should come forward with evidence to support her alleged violation rate. See Lopez v. Adesa, Inc., No. EDCV 19-1183 PSG (RAOx), 2019 WL 4235201, at *3 (C.D. Cal. Sept. 6, 2019) ("while not required, Plaintiff has not offered any better estimate of the alleged violation rate, despite the fact that [ ]he most likely knows at least roughly how often [ ]he was not afforded the required meal [and rest] breaks.") (citing Unutoa v. Interstate Hotels & Resorts, Inc., No. 2:14–cv–09809–SVW–PJW, 2015 WL 898512, at *3 (C.D. Cal. 2015) ("Notably, Plaintiff fails to assert any different rate of violation or to submit any evidence indicating a contrary rate of violation. Plaintiff does not even submit her own declaration stating that she experienced less frequent rates of violation than those asserted by Defendants.")). In Ibarra, while the Ninth Circuit recognized that the removing defendant has the burden of proof, it noted that despite the plaintiff's opposition to the violation rates, he "did not assert an alternative violation rate grounded in real evidence, such as an affidavit by Ibarra asserting how often he was denied meal and rest breaks." Ibarra, 775 F.3d at 1299 (the court remanded "on an open record for both sides to submit proof related to the disputed amount in controversy"). Here Plaintiff did not submit any evidence of her own to challenge Defendants' violation rates that were based on reasonable assumptions.